IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3153-FL

| | |
|---|---|
| LLOYD D. SHIPLEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DEPARTMENT OF JUSTICE BUREAU OF PRISONS; UNITED STATES DEPARTMENT OF JUSTICE; HARLEY G. LAPPIN; HARRELL WATTS; TRACY W. JOHNS; ROSCOE RAMSEY; DR. BLAIR; PETER LIBERO; DR. PRZYBYLA;[1] DR. BONNER; PHYSICIAN ASSISTANT SPILLER; ROBIN HUNTER- BUSKEY; DR. SLUSS; AND CHERYL DANIEL,[2] | ) ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |

ORDER

The matter comes before the court on the motion for summary judgment[3] (DE # 43) pursuant to Federal Rule of Civil Procedure 56 and the motion to stay the order regarding planning and scheduling (DE # 45) filed by defendants C. Daniel ("Daniel"), Dr. C. Bonner ("Bonner"), Dr. Roscoe Ramsey ("Ramsey"), and Dr. Sluss ("Sluss"). The matter was fully briefed. In this posture,

---

[1] Plaintiff refers to this defendant as both Presbyla and Przybyla. This defendant is referred to as Przybyla by the United States District Court for the District of Columbia on September 29, 2009. Thus, the court will refer to this defendant as Przybyla. On September 16, 2009, plaintiff moved to dismiss Przybyla from this action without prejudice. The United States District Court for the District of Columbia granted plaintiff's motion on September 29, 2009, and plaintiff's claims against Przybyla were dismissed without prejudice.

[2] Cheryl Daniel has informed the court that she was known as Cheryl Autrey until October 2008 when she legally changed her name to Cheryl Daniel. Daniel Aff. ¶ 13.

[3] Defendants filed a motion to dismiss. However, because they attached matters that are outside of the pleadings, the court will construe their motion as a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

the matter is ripe for adjudication. For the foregoing reasons, the court grants defendants' motion for summary judgment and denies as moot their motion to stay.

## STATEMENT OF THE CASE

On March 13, 2009, plaintiff, a federal inmate, filed this action in the United States District Court for the District of Columbia pursuant to the Federal Torts Claim Act ("FTCA"), 28 U.S.C. § 2672, *et seq.* and pursuant to <u>Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971)*,* against defendants the Bureau of Prisons ("BOP")*,* Harley G. Lappin ("Lappin"), Harrell Watts ("Watts"), Tracy W. Johns ("Johns"), Roscoe Ramsey ("Ramsey"), Peter Libero ("Libero"), Dr. Blair ("Blair"), Dr. Bonner ("Bonner"), Physician Assistant Spiller ("Spiller"), Robin Hunter-Buskey ("Hunter-Buskey"), and Dr. Peter Przybyla ("Przybyla"). Plaintiff alleged that defendants acted with both negligence and deliberate indifference to his eye care in violation of the Eighth Amendment to the United States Constitution, and that defendants violated his rights pursuant to the Due Process Clause of the Fifth Amendment to the United States Constitution because they used canned responses and rejections in response to his grievances. Plaintiff also alleged that Dr. Jiminez ("Jiminez"),[4] Hunter-Buskey, and Physician Assistant Sluss ("Sluss") violated his rights pursuant to the First Amendment to the United States Constitution and that defendants violated his rights pursuant to the Equal Protection Clause of the Fifth Amendment. The action was transferred to this court on August 30, 2010.

Following transfer to this court, defendants moved to dismiss plaintiff's complaint. On September 14, 2011, the court granted in part and denied in part defendants' motion to dismiss. The action was dismissed without prejudice, as to all of plaintiff's claims except his Eighth Amendment

---

[4] Plaintiff does not provide the first names for Drs. Jiminez, Johnson, Hall, or Kim.

2

claim regarding his medical care against Daniel, Bonner, Ramsey, and Sluss. In that same order, the court dismissed, without prejudice, as frivolous plaintiff's claims against Nwude, Watts, Johns, and Lappin. The court thereafter entered an initial order regarding planning and scheduling.

On October 17, 2011, Daniel, Bonner, Ramsey, and Sluss filed a motion for summary judgment. Sluss argues plaintiff's claim against him should be dismissed because he is entitled to absolute immunity as a member of the Public Health Service. Daniel, Bonner, and Ramsey argue that they are entitled to qualified immunity for plaintiff's claim against them. The matter was fully briefed. Defendants also filed a motion to stay the court's issuance of an order regarding planning and scheduling.

**STATEMENT OF FACTS**

Viewing the facts in the light most favorable to plaintiff, the facts are as follows. Ramsey, a physician at Butner, served as plaintiff's primary care provider from 2007 through 2009, and was in charge of coordinating the care that plaintiff received. Ramsey Aff. ¶¶ 5,7. Ramsey saw plaintiff in the chronic care clinic approximately every three months for treatment of the following medical conditions: (1) coronary artery disease; (2) hypertension; (3) dyslipidemia; (4) benign prostatic hypertrophy with bladder outlet obstruction; and (5) ocular cicatricial pemphigoid ("OCP"). Id. ¶¶ 6, 7.

At issue in this case is defendants' care of plaintiff's OCP, which is an auto immune disorder in which the conjunctiva (the mucous membrane that lines the inner surface of the eyelids and is continued over the forepart of the eyeball) is targeted by the body's defenses as if it is a foreign object. Id. ¶ 8. The trigger for this process is unknown, but it occurs in people that are genetically predisposed to the disorder. Id. Once the process begins, the goal of treatment is to prevent the

3

formation of "scar" tissue, which can lead to blindness. Id. On September 20, 2004, plaintiff received a cornea transplant on his right eye and he received a cornea transplant on his left on May 10, 2005. Compl. p. 8. Plaintiff states the cornea transplants resulted in 20/45 vision. Id.

On April 29, 2007, a Sunday, Daniel, a Health Systems Specialist[5] with the Federal Bureau of Prisons, saw plaintiff in the Butner Health Services Department in response to plaintiff's complaint that he was itching all over his body due to an allergic reaction to the Fentanyl patch[6] that had been placed on his back the previous morning. Daniel Aff. ¶ 7. Plaintiff also complained that he was experiencing eye pain. Id. Daniel contacted the pharmacy and was informed that the itching plaintiff was experiencing was a typical reaction to the patch. Id. Daniel then contacted the hospitalist[7] to obtain a plan for care. Id. The hospitalist saw plaintiff that same day and ordered that his use of the Fentanyl patch be discontinued and that his allergic reaction be treated. Id. The hospitalist instructed plaintiff to follow-up with his primary care physician the next day. Id.

On Saturday October 20, 2007, Daniel, saw plaintiff for an emergency visit during which plaintiff complained that his contact lens had come unglued from his cornea. Id. ¶ 8. Plaintiff told Daniel that it felt like "barbwire in [his] eye every time [he] blink[ed]" and reported a pain level of ten (10) on a scale of one to ten (10). Id. Daniel then contacted the hospitalist and plaintiff was seen that same day. Id. The hospitalist prescribed plaintiff Tylenol Number 3 and contacted Bonner, the Clinical Director and the chair of Butner's Utilization Review Committee, by phone for instructions regarding plaintiff's medical care. Id.; Bonner Aff. ¶ 10. Plaintiff states that Bonner instructed

---

[5] From July 16, 2000 through November 25, 2007 and from March 2008 through July 2008, Daniel worked as a Licensed Practical Nurse. Daniel Aff. ¶ 2.

[6] A Fentanyl patch is a patch that is applied to the skin and releases pain medication over a period of time. Id. ¶ 7.

[7] A hospitalist is a contract physician on duty after normal business hours. Id. ¶ 7.

4

Daniel that "if plaintiff was not having a stroke or a heart attack, the plaintiff would be alright." Compl. p. 8. Bonner, however, asserts that he instructed staff to treat plaintiff's pain and to schedule an appointment with ophthalmology the following Monday morning. Bonner Aff. ¶ 12. Plaintiff also was issued eye pads and tape. Daniel Aff. ¶ 8. As a result of the incident, Ramsey submitted a consultation request on October 22, 2007, requesting that plaintiff be treated at the Duke Eye Center. Ramsey Aff. ¶ 12. Plaintiff then was transported to the Duke Eye Center that day. Id.

On June 12, 2008, plaintiff attended an appointment at Duke Eye Center. Id. ¶ 16. The notes from that appointment indicated that a follow-up appointment was not necessary. Id. Ramsey then saw plaintiff for a chronic care appointment on July 21, 2008. Id. ¶ 17. Plaintiff told Ramsey that his eyes were the same and denied pain in his eyes. Id. Ramsey renewed plaintiff's eye medications. Id. Plaintiff asserts that Ramsey informed him that he would schedule an appointment for plaintiff to see an eye doctor, but that he was not scheduled to see an eye doctor for several months. Plaintiff states that his eyesight deteriorated.

On October 21, 2008,[8] Ramsey again saw plaintiff for a chronic care appointment. Ramsey Aff. Id. ¶ 18. At that appointment, plaintiff denied having pain, but inquired about whether he should return to the Duke Eye Center. Id. Ramsey submitted a consultation request for plaintiff to be seen at the Duke Eye Care Center for an evaluation. Id. Plaintiff attended his appointment with the Duke Eye Care Center on December 18, 2008. Id.

As Clinical Director and the chair of Butner's Utilization Review Committee, Bonner was not directly involved in the provision of medical care to inmates, and, aside from the two incidents

---

[8] Plaintiff's medical records reflect that plaintiff made the request to see a eye specialist at his October 21, 2008 appointment, and that the appointment request was made on November 21, 2008. Notice of Filing Med. Records Ex. B pp. 242, 294.

5

discussed above, had limited contact with plaintiff. Bonner Aff. ¶ 6. Bonner was, however, responsible for review of requests for outside consultations with specialists for treatment of plaintiff's eye condition. Id. ¶ 7. Specifically, from January of 2007 through June of 2008, Bonner reviewed and approved the following medical consultations for plaintiff:

    a. January 10, 2007-approved medical consult for follow-up
    b. January 24, 2007-approved medical consult for follow-up with ophthalmology
    c. February 14, 2007-approved medical consult for follow-up regarding a keratoplasties procedure
    d. March 14, 2007-approved medical consult for follow-up regarding gluing of corneal perforation
    e. April 4, 2007-approved medical consult for follow-up regarding the perforation of his left eye
    f. April 11, 2007-approved medical consult for follow-up visit regarding the corneal perforation of his left eye
    g. July 5, 2007-approved medical consult for follow-up regarding his progressive ocular cicatricial pemphigoid
    h. August 23, 2007-approved medical consult for follow-up regarding progressive ocular cicatricial pemphigoid
    i. September 19, 2007-approved medical consult for follow-up regarding his status post corneal transplant
    j. January 2, 2008-approved medical consult for follow-up from re-gluing of his corneal lens
    k. January 30, 2008-approved medical consult for follow-up regarding his status post corneal transplant
    l. April 9, 2008-approved medical consult for follow-up regarding his status post corneal transplant
    m. June 4, 2008-approved medical consult for follow-up evaluation for OCP and his failed corneal transplants.

Id. As of December 2008, Bonner no longer served as Butner's Clinical Director, and no longer was involved in the Utilization Review Committee's reviews or decisions. Id. ¶ 11.

## DISCUSSION

A.   Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

B.   Analysis

1.   Sluss

Sluss argues that he should be dismissed from this action because he is entitled to absolute immunity pursuant to 42 U.S.C. § 233(a) of the Public Health Service Act. Section 233(a) protects commissioned Public Health Service officers and employees from being subject to suit "for damage for personal injury . . . resulting from the performance of medical, surgical, dental, or related functions." See Cuoco v. Moritsugu, 222 F.3d 99, 107 (2nd Cir. 2000); Cook v. Blair, No. 5:02-CT-609-BO, 2003 WL 23857310, *1 (E.D.N.C. March 21, 2003), aff'd by 82 F. App'x 790 (4th Cir. 2003). Under § 233(a), the exclusive remedy for actions against Public Health Service members is against the United States pursuant to the Federal Tort Claims Act ("FTCA"). See 42 U.S.C. § 233(a); Cook, 2003 WL 23857310, *1 (citing Cuoco, 222 F.3d at 107).

7

Sluss testified in an affidavit that, at the time he provided medical care to plaintiff at Butner, he was employed by the United States Department of Health and Human Services as a commissioned officer in the United States Public Health Service. Sluss Decl. ¶ 1. Specifically, Sluss served as a physician assistant at the Federal Correctional Complex in Butner, North Carolina. Id. Accordingly, even if plaintiff's allegations of inadequate medical care are true, Sluss, as an officer of the Public Health Service, is entitled to absolute immunity pursuant to § 233(a) because Sluss is being sued based upon his performance of a medical function. Because Sluss is immune from plaintiff's suit, plaintiff's Bivens claim against him is DISMISSED.

2. Daniel, Bonner, and Ramsey

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. at 286. The Fourth Circuit has recognized a two--pronged qualified immunity inquiry:

> First, we must decide whether a constitutional right would have been violated on the facts alleged. Next, assuming that the violation of the right is established, courts must consider whether the right was clearly established at the time such that it would be clear to an objectively reasonable officer that his conduct violated that right.

Bailey v. Kennedy, 349 F.3d 731, 739 (4th Cir. 2003) (internal quotations omitted). With respect to the second step, "[t]he relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was lawful in the

8

situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001), receded from by, Pearson v. Callahan, 555 U.S. 223 (2009). A court has discretion to decide which step of the two--prong test to analyze first. Pearson, 555 U.S. at 242.

Plaintiff claims Daniel, Bonner, and Ramsey acted with deliberate indifference to his serious medical needs. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

Assuming, without deciding, that plaintiff is able to satisfy the objective prong of the Eighth Amendment test, the court turns to the subjective prong of the test–whether Daniel, Bonner, and/or Ramsey acted with deliberate indifference. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis

9

or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

      a.    Daniel

The evidence in the record reflects that Daniel's contact with plaintiff was limited to two occasions, October 20, 2007 and April 29, 2007. Plaintiff's visits with Daniel, a then nurse, occurred on the weekend after normal business hours. On both occasions, the record reflects that Daniel saw plaintiff, assessed him, and promptly referred him to a hospitalist and/or Bonner for medical treatment. In both cases, the on duty physician ordered a course of treatment, which Daniel followed. As a nurse, Daniel was "entitled to rely on [a] doctor's medical judgment as to the appropriate course of treatment for [a patient's] conditions and cannot override the doctor's orders." Miller v. Marsh, No. 7:11CV00180, 2012 WL 844391, at *5 (W.D. Va. Mar. 12, 2012) (citing Miltier v. Beorn, 896 F.2d 848, 854-55 (4th Cir. 1990)). To the extent plaintiff alleges Daniel did not follow the recommended treatment plan, there is no evidence or factual allegations to support such a conclusion.

Based upon the foregoing, the court finds that plaintiff has not provided any evidence, outside of conclusory allegations, to establish that Daniel knew of and disregarded an objectively serious condition, medical need, or risk of harm. Because plaintiff has failed to establish the subjective prong of the Eighth Amendment test, there is no constitutional violation, Daniel is entitled to qualified immunity.

10

Case 5:10-ct-03153-FL   Document 57   Filed 09/07/12   Page 10 of 13

b.    Ramsey

Plaintiff alleges that Ramsey failed to refer him to an eye specialist. The evidence in the record reflects that plaintiff saw an eye specialist regularly from January 10, 2007, through June 4, 2008. The medical records indicate that, contrary to plaintiff's allegations, the notes from plaintiff's June 12, 2008, visit with the Duke Eye Center provided no indication that a follow-up appointment was necessary. The medical records further reflect that Ramsey scheduled an appointment with the Duke Eye Center in December 2008, after plaintiff inquired about an appointment at his October 21, 2008, appointment. There is no evidence in the record to support a conclusion that Ramsey knowingly delayed scheduling an appointment with the Duke Eye Center with the intent to cause plaintiff harm or that he otherwise knowingly disregarded plaintiff's serious medical needs. Plaintiff has not presented any evidence to the contrary. Accordingly, to the extent there was any delay in scheduling plaintiff's appointments, the delay resulted from negligence and not deliberate indifference.

As for plaintiff's general allegations that Ramsey failed to follow through with orders and referrals, and that Ramsey failed to timely administer his medications, the record does not support such conclusions. Rather, the evidence in the record reflects that Ramsey continually monitored and evaluated plaintiff's eye condition during plaintiff's regular chronic care appointments from 2007 through 2009. The record further reflects that plaintiff was treated for his OCP at two specialty centers for the eye, the North Carolina Eye, Ear, Nose, and Throat Clinic and at the OCP Clinic at the Duke Eye Center.[9] Ramsey Aff. ¶ 9. Plaintiff's medical records reflect that Ramsey regularly

---

[9] The court notes that Ramsey states in his affidavit that due to the severity of plaintiff's initial injuries to his eyes and the several unsuccessful cornea transplants, plaintiff's prognosis was not good. Ramsey Aff. ¶ 9. Ramsey explained that scar tissue continued to form in plaintiff's eyes, despite prescribed treatment. Id. Plaintiff eventually lost his eyesight, and restoration of his eyesight was not a possibility. Id. Because plaintiff eventually developed blindness, the

11

reviewed and adjusted plaintiff's medications,[10] and referred him to an eye specialist on multiple occasions.

Based upon the foregoing, the evidence reflects that Ramsey provided consistent care for plaintiff's eye condition. Nothing more than negligence or malpractice was alleged or shown, and such conduct does not state a claim pursuant to § 1983.[11] Estelle, 429 U.S. at 105-106; see also, Russell v. Sheffer, 528 F.2d 318 (4th Cir. 1975) (disagreements over course of treatment are not actionable). Because plaintiff has failed to establish a constitutional violation, Ramsey is entitled to qualified immunity.

    c.    Bonner

The evidence in the record reflects that Bonner's direct involvement with plaintiff's medical care was limited to the October 20, 2007 and April 29, 2007, visits with Daniel. On both occasions, the hospitalist had provided plaintiff medical treatment for his complaints. As to the October 20, 2007 emergency visit, Bonner provided further instruction to Daniel to treat plaintiff's pain and to schedule a follow-up appointment with Ophthalmology the following Monday morning. The record reflects that plaintiff attended the appointment with Ophthalmology the following Monday. Plaintiff has provided no evidence to contradict the evidence in his medical records. Aside from plaintiff's conclusory allegations, which are belied by the record, that when Daniel told Bonner about

---

aim of treatment was to provide plaintiff comfort. Id. ¶ 9. To that end, Ramsey prescribed plaintiff a contact lens to wear on his cornea to prevent debris from entering his eye. Id.

[10] The court notes that Ramsey states that Dapsone, an antimicrobial agent, is the treatment of choice for OCP. Id. ¶ 7.

[11] The court further notes that many of plaintiff's allegations regarding his care are conclusory, lacking specific identifying details regarding the particular defendant, date, or circumstances involving the alleged acts of deliberate indifference. Accordingly, plaintiff has failed to state a constitutional violation based for his conclusory allegations. See White v. White, 886 F.2d 721, 723 (4th Cir. 1989) (Finding *pro se* complaints require a minimum level of factual support.)

12

plaintiff's displaced contact lens that if he did not have a stroke or heat attack, he would be fine, plaintiff has not articulated that Bonner knew of and disregarded an objectively serious condition, medical need, or risk of harm in the course of his direct involvement with plaintiff.

As for Bonner's involvement with the Utilization Review Committee, the record reflects that the Utilization Review Committee approved thirteen requests for an outside consultation with specialists to care for plaintiff's eye condition. The record further reflects that plaintiff saw an eye specialist the Monday, October 22, 2007, following his Saturday October 20, 2007, emergency visit. See Ramsey Decl. ¶ 12. Based upon this evidence, the court finds that Bonner did not act with deliberate indifference to plaintiff's medical care, and plaintiff is unable to satisfy the subjective prong of the Eighth Amendment test. Because plaintiff has not established a constitutional violation, Bonner is entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment (DE # 43) is GRANTED. Because the court granted defendants' motion for summary judgment, their motion to stay (DE # 45) is DENIED as moot. The Clerk of Court is DIRECTED to close this case.

SO ORDERED, this the 7th day of September, 2012.

_/s/ Louise W. Flanagan_
_____
LOUISE W. FLANAGAN
United States District Judge